U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 2 1 2006

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50140-01 |
| versus | JUDGE HICKS |
| DUANE WILLIAMS | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is Defendant's Motion to Suppress (Doc. 11). An evidentiary hearing was held on November 28, 2006. For the reasons that follow, it is recommended that Defendant's motion be denied.

### The Facts

The following facts were established at the evidentiary hearing. On June 21, 2006, Deputy Gary Bailey and Cpl. James McLamb, both of the Caddo Parish Sheriff's Office's K-9 Division, were on routine patrol in their respective police cruisers on Interstate 20 near the Louisiana-Texas border. Around midnight, Bailey and McLamb observed a vehicle driving slower than the speed limit, and Deputy Bailey suspected that the driver of that vehicle was either asleep or intoxicated. Accordingly, Bailey positioned his police car

behind the vehicle and observed the vehicle cross the right fog line several times. Bailey then activated his overhead lights and initiated a traffic stop.[1]

Bailey approached the driver's door of the vehicle, and he detected the odor of burnt marijuana.[2] He asked the driver, Lee Brown, for his driver's license. Bailey then asked Brown to exit the vehicle and stand in front of the patrol car. Bailey asked Brown if he had been drinking, because Brown's eyes were bloodshot and his breathing was heavy. Bailey asked Brown if the vehicle belonged to him, and Brown replied that the vehicle belonged to Defendant, the passenger. Bailey also asked Brown about his travel itinerary, and Brown told Bailey that the two men had driven to Longview, Texas to drop off a female acquaintance, and they were on their way back to Mississippi.

Bailey then walked to the passenger side of the vehicle and made contact with Defendant. Defendant would not make eye contact with Bailey, so Bailey became suspicious that Defendant was attempting to hide something. Bailey asked Defendant for the vehicle's registration, and Defendant produced a rental contract. Government Exhibit 3. Bailey noticed that the rental contract was in the name of Louis Jackson, and no other drivers were authorized under the contract. Only Brown and Defendant were in the vehicle. The contract

---

[1] When the overhead lights were activated, the video camera in Bailey's police car should have turned on automatically. However, Bailey's camera malfunctioned, and there are no video or audio recordings of the traffic stop. Bailey had problems with his camera previously, and there is no evidence that anyone tampered with the camera so that a recording was not made.

[2] At the evidentiary hearing, both Defendant and Brown admitted that, upon approaching the vehicle, Bailey asked whether the odor he smelled was marijuana.

also limited operation of the vehicle to Mississippi and Tennessee. Consequently, the car was not authorized to be in Texas or Louisiana.

Bailey asked Defendant for his driver's license, and he also asked Defendant why they were on Interstate 20. Defendant told Bailey that he and Brown went to Longview, Texas to see a female. Bailey asked Defendant if they had dropped off a female in Longview, and Defendant denied doing so. Defendant could not give Bailey the name of the female they went to Longview to see.

Bailey then radioed McLamb and asked him to come to the scene. Bailey did so because of several "clues" that caused him to be suspicious of possible criminal activity: neither the driver nor the occupant was the authorized driver of the rental car; the rental car was not allowed to be outside of Mississippi or Tennessee; the smell of burnt marijuana; the nervous behaviors of the driver and passenger; and their conflicting stories. It took approximately five minutes for McLamb to arrive at the scene.[3]

While waiting for McLamb to arrive, Bailey had a an additional conversation with the driver, Brown. Bailey asked Brown if he had any narcotics or weapons. Brown said he had "nothing." Bailey then asked Brown for consent to search, and Brown responded that Bailey could look if he wanted. Brown then approached Defendant and asked Defendant if he knew the location of the trunk latch. Defendant told Brown that he did not know. Brown then took

---

[3] At some point during the stop, Defendant began vomiting. Emergency medical services responded, but Defendant refused treatment. Government Exhibit 7.

the keys from the ignition of the vehicle and opened the trunk. Bailey saw a red bag in the trunk. He could see and feel a hard object through the outside of the bag, so he opened the zipper slightly, inserted his fingers into the bag and felt what he believed were two bricks of illegal drugs. McLamb had not yet arrived at the scene, and because officers typically do not search a vehicle alone, Bailey closed the trunk.

In his testimony, Brown denied that he gave consent to the search of the car and that he opened the trunk. Brown testified that Bailey snatched the keys out of Brown's hand and that he (Bailey) opened the trunk. However, Brown's testimony is simply not believable. At times, his testimony was confusing and incoherent.[4]

Once McLamb arrived, Bailey removed his canine from his (Bailey's) vehicle and walked the dog around the suspects' vehicle.[5] The dog showed interest in the inside of the car, and he "alerted" to the rear passenger quarter panel, which indicated a strong odor of narcotics in or near the trunk. Bailey then opened the trunk. There were two bags inside: a red bag which was found to have two bricks of cocaine and a blue bag which was found to contain $17,000 in cash. Both Defendant and Brown were handcuffed and advised of their

---

[4] The report of DEA Task Force Agent Rick Anderson also erroneously stated that Bailey opened the trunk. However, Anderson was not present at the traffic stop, and his report is based solely on the reports of the other officers and his discussions with them. Bailey's report correctly states that it was Brown who opened the trunk, and Anderson candidly admitted that he paraphrased inaccurately the facts regarding who opened the trunk.

[5] When asked why he ran his canine around the suspect's vehicle, even though he had already felt what he believed to be narcotics inside the trunk, Bailey stated that he did so to "reward" his dog and to see if there were drugs concealed elsewhere in the vehicle.

rights under Miranda.[6]  Inside the vehicle, police found two cell phones from which the memory chips had been removed.[7]  When Defendant was booked at the police station, the two memory chips were found hidden in his socks.

Defendant testified at the evidentiary hearing.  He explained that he attempted to rent a car in his own name, but his debit card did not work, so he had to find someone to rent the car for him.  Defendant's friend, Louis Jackson, rented the car.  However, according to Defendant, it was understood that he (Defendant) was going to be the driver.  Defendant could not explain why he was not listed as an authorized driver under the rental agreement and why the rental agreement limited the car to Mississippi and Tennessee.

Defendant admitted that he looked straight ahead during the stop.  In attempting to explain his behavior, Defendant testified that he was not worried about anything because he had not done anything wrong.  Defendant admitted that, when Deputy Bailey approached the car, Bailey asked the occupants if it was marijuana that he smelled.  Defendant also admitted that Brown asked him for the location of the latch to open the trunk.  Defendant further admitted that he did not know what was said by Brown and Bailey while they were standing at the back of the rental vehicle; that he saw the keys in Brown's hand; and that the trunk was opened a couple of minutes after he saw the keys in Brown's hand.

---

[6] Defendant does not challenge the voluntariness of any of his post-Miranda statements, so it is unnecessary to address his statements herein.

[7] According to Bailey, when an authorized driver of a rental vehicle is not present, the owner of the vehicle is notified, the car is impounded, and its contents are inventoried.  See Government Exhibit 4 (vehicle tow sheet).

**Law Regarding Traffic Stops**

The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1 (1968). See Knowles v. Iowa, 525 U.S. 113, 117 (1998); Berkemer v. McCarty, 468 U.S. 420, 439 (1984); United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004)(en banc). Under the two-part Terry reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20; Brigham, supra at 506-507; U.S. v. Lopez-Moreno, 420 F.3d 420, 429-434 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. See United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417 (1981). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., United States v. Santiago, 310 F.3d 336, 340 (5th Cir.2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from

each other. Arvizu, 534 U.S. at 274. However, it is clear that the officer's mere hunch will not suffice. Terry, 392 U.S. at 27. It is also clear that reasonable suspicion need not rise to the level of probable cause. Arvizu, 534 U.S. at 274.

An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses. United States v. Lenz, 162 Fed. Appx. 379, 382 (5th Cir. 2006). Thus, an officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment. Scott v. United States, 436 U.S. 128, 138 (1978); Devenpeck v. Alford, 543 U.S. 146, 153 (2004). See also Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir. 1997) ("So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment ....").

As for the second prong of the Terry inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Brigham, 382 F.3d at 507. In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. Id. at 507-08. An officer may also ask the driver about the purpose and itinerary of his trip. Id. at 508. Indeed, the

officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." Id.

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. Brigham, 382 F.3d at 510. See also Santiago, 310 F.3d at 341-42; United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193, 200 (5th Cir.1999), *corrected on denial of rehearing*, 203 F.3d 883 (5th Cir. 2000). A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. See Brigham, 382 F.3d at 507; United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003); U.S. v. Jenson, 462 F.3d 399, 404 (5th Cir. 2006). However, mere "uneasy feelings" and inconsistent stories between a driver and passenger do not constitute articulable facts that support a reasonable suspicion of drug trafficking. U.S. v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006).

**Analysis**

Defendant does not challenge the validity of the initial traffic stop, although he insinuated at the hearing that the stop was pretextual. The evidence showed that Bailey had probable cause to stop the vehicle for a traffic violation. Bailey's subjective intentions are irrelevant, and Defendant's pretext argument has no merit. Devenpeck, 543 U.S. at 153.

The thrust of Defendant's motion to suppress is that the stop was unconstitutionally prolonged; that Bailey had no probable cause to search the vehicle; and that Brown did not consent to the search of the vehicle. In response, the Government argues that the smell of burnt marijuana gave Bailey probable cause to search the vehicle; that Defendant has no standing to complain of the search; that the driver (Brown) consented to the search; and that the drugs and cash would have been inevitably discovered during the impoundment of the vehicle. Because Bailey had probable cause to search the vehicle, and because Brown freely consented to the search during a proper Terry stop, the court need not reach the Government's other arguments.

**Smell of Marijuana**

When Bailey first approached the vehicle after making the traffic stop, he smelled what he knew to be the odor of burnt marijuana. The Fifth Circuit has repeatedly held that the smell of the marijuana gives rise to probable cause to search a vehicle for drugs. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005)(detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. McSween, 53 F.3d 684, 686-687 (5th Cir. 1995)(the smell of marijuana alone may be enough for a finding or probable cause); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989) (the officer's detection of marijuana "in itself ...justified the subsequent search of [the defendant's] vehicle"); United States v. Henke, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); United

States v. Gordon, 722 F.2d 112, 114 (5th Cir.1983) (same); United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir.1978) (same). Thus, Bailey had probable cause at the outset to search the vehicle. That Bailey waited to search the car until his back-up arrived, or until he investigated further, does not invalidate the search. United States v. Johns, 469 U.S. 478, 484 (1985).

Defendant does not dispute that the smell of marijuana gives rise to probable cause to search. Defendant's Supplemental Brief, p. 3. Instead, Defendant argues that Bailey could not disregard the facts that tended to dissipate the probable cause. Defendant points out that no marijuana or drug paraphernalia was ever found in the vehicle; Bailey did not see anything thrown out of the vehicle; and McLamb did not smell marijuana after he arrived on the scene. However, none of these arguments diminishes Bailey's probable cause. The marijuana could have been consumed or discarded by the occupants of the vehicle before Bailey initiated the stop. Furthermore, McLamb testified that he did notice the faint smell of something burnt when he first walked up to the vehicle, but he did not know whether it was marijuana. Bailey, on the other hand, testified that he is familiar with the smell of marijuana, and there was no doubt in him mind that the odor in the vehicle was marijuana.[8]

---

[8] The order of marijuana coming from the vehicle is consistent with the fact that Bailey's K-9 showed interest in the inside of the vehicle.

**Reasonable Suspicion**

Even setting aside the probable cause that existed at the outset from the odor of marijuana, Bailey had reasonable suspicion that criminal activity was afoot, and that suspicion increased throughout the encounter until Brown consented to the search. Under Brigham, a detention must be temporary and "last no longer than necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Id. at 507. There is no constitutional impediment to an officer's request to examine a driver's license and vehicle registration or rental papers during a traffic stop and run a computer check on them. Id. at 508. The officer also may ask about the purpose and itinerary of a driver's trip. Such questions may efficiently determine whether a traffic violation has taken place, and if so, whether a citation or warning should be issued or an arrest made. All of these inquiries are within the scope of investigation attendant to the traffic stop. Id.

In this case, Bailey noticed that Brown's eyes were bloodshot and he was breathing heavily. Defendant, the passenger, looked straight ahead and avoided eye contact with Bailey, as if he was trying to hide something. Brown and Defendant gave Bailey significantly different reasons for why they had traveled to Longview, Texas. Neither Brown nor Defendant was an authorized driver of the rental car, and the rental contract did not permit the vehicle to be driven to Texas or Louisiana.

Given his increasing suspicions, Bailey's continued detention of Brown and Defendant was within the scope of the detention justified by the traffic stop and by the reasonable suspicions that developed during the stop. According to Brigham, the relevant question in assessing whether a detention extends beyond a reasonable duration is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Id. There is no single formulaic approach that an officer must adopt in order to allay his reasonable suspicions during a traffic stop. Id. at 512. According to the Court:

> [W]e do not presume to prescribe in the abstract the scope of questioning, investigative techniques, or the length of permissible detention that may be undertaken following a valid traffic stop. The bounds of existing caselaw are clear, if fact-intensive: **a traffic detention may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion, supported by articulable facts within the officer's professional judgment, that emerges during the stop.** [Emphasis added.]

Id.

There is nothing in the record to show or suggest that Bailey improperly prolonged the stop in order to obtain consent to search. Indeed, the evidence shows that Bailey acted promptly and responsibly in resolving the reasonable suspicion that continued to emerge during the stop. Accordingly, Bailey's actions were constitutionally permissible under Terry and Brigham.

**Brown's Consent to Search**

A consensual search is a well-settled exception to the warrant requirement. United States v. Navarro, 169 F.3d 228, 231 (5th Cir. 1999). In determining whether a search based upon consent is valid, the Government must prove that the search was voluntary and that the defendant consented to the search or consent was obtained from a third party with the ability to give valid consent. United States v. Jenkins, 46 F.3d 447, 451-452 (5th Cir.1995). In determining whether a consent to search is voluntary, the Fifth Circuit reviews several factors, no one of which is dispositive. These factors include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. Id.

The evidence shows that Brown freely and voluntarily consented to a search of the vehicle.[9] In fact, Brown voluntarily opened the trunk before Bailey expected him to do so. Bailey did not want to search the car alone, and his back-up, Cpl. McLamb, had not yet arrived. After Bailey asked Brown for consent to search the vehicle, Brown asked Defendant (who was sitting in the passenger seat) where the truck release latch was located. When Defendant responded that he did not know, Brown removed the car keys from the ignition

---

[9] Defendant does not argue that Brown, the driver, could not legally give consent to a search of the rental vehicle.

and quickly opened the trunk using the keys. Brown was not in custody at the time he gave consent and opened the trunk; no coercive police procedures were used; and Brown was cooperative. The rapidity with which Brown opened the trunk indicates he believed that no incriminating evidence would be found. There was no evidence that Brown was aware of his right to refuse consent or the level of his education and intelligence. Nevertheless, considering the totality of the circumstances, Navarro, 169 F.3d at 231, Brown's consent to search the vehicle was given voluntarily and freely.

**Conclusion**

The Government has proffered several justifications for the search of the vehicle, but it is sufficient for the court to find that (a) the smell of marijuana coming from the vehicle gave rise to probable cause for the search; and (b) the driver of the vehicle freely and voluntarily consented to the search which led to the discovery of the drugs and cash. Therefore, the court need not address the standing, inevitable discovery and other arguments raised by the Government.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Doc. 11) be **denied.**

<u>**Objections**</u>

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 21st day of December, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE